# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69614-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| MYLES LAWRENCE HILLS, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: May 19, 2014 |
| | ) | |

Cox, J. — "[S]upplemental instructions should not go beyond matters that either had been, or could have been, argued to the jury" under a court's original instructions.[1] Here, the trial court gave a supplemental instruction in response to a jury question during its deliberations. The instruction went beyond the scope of matters that were argued or could have been argued during closing. Because the trial court abused its discretion in giving the supplemental instruction, we reverse and dismiss two of Hills's six convictions.

We affirm Hills's other four convictions, but remand for the trial court to strike the unauthorized term of community custody for these convictions.

---

[1] State v. Ransom, 56 Wn. App. 712, 714, 785 P.2d 469 (1990).

The State charged Myles Lawrence Hills with four counts of tampering with a witness – domestic violence (Counts I through IV), and two counts of domestic violence misdemeanor violation of a court order (Counts V and VI). The two counts of violation of a court order are primarily at issue in this appeal.

At trial, the court admitted two domestic violence no-contact orders. One order was entered by King County District Court in March 2012. The other was entered by King County Superior Court in May 2012.

Instruction No. 14, the to-convict instruction for Count V that the court gave to the jury before its deliberations, stated that the State was required to prove:

> (1) That on or about May 20 2012, there existed a no-contact order which had been issued by the King County District Court, South Division, on March 13 2012, and it was applicable to the defendant;
>
> (2) ***That the defendant knew of the existence of this order;***
>
> (3) That on or about May 20 2012, the defendant knowingly violated a provision of this order which was a restraint provision prohibiting contact with a protected party; and
>
> (4) That the defendant's act occurred in the State of Washington.[2]

Instruction No. 15, the to-convict instruction for Count VI, contained parallel wording to that in Instruction No. 14, except that it contained information relevant to the second no contact order.

The court also gave a limiting instruction in light of concerns that the jurors might view the two court orders and make a negative assumption about Hills, the object of such orders. The limiting instruction, Instruction No. 16, stated:

---

[2] Clerk's Papers at 43 (emphasis added).

Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of two no contact orders which may be considered by you *only for the purpose of determining whether there existed a no-contact order in Count V or Count VI. You may not consider it for any other purpose.* Any discussion of the evidence during your deliberations must be consistent with this limitation.[3]

During closing argument, the State argued that Hills knew of the no contact orders, as evidenced by the signatures on the orders. The prosecutor stated: "[Hills] signed the court order. He signed both of the court orders prohibiting contact. You'll have those in evidence with you. You can look at them. You can you see it."[4]

We can find no evidence in this record that the signatures on the orders were those of Hills. And the State has not called our attention to any such evidence.

In response, defense counsel argued:

[Y]ou will also receive a limiting instruction, an instruction from the Judge, I think it's instruction number 16, that tells you, *you can only consider the no contact order for the limited purpose of whether or not a no contact order existed. You cannot consider the no contact order for whether or not [Hills] had notice of it, whether or not he knew about it, whether or not he knowingly violated it.*[5]

During deliberations, the jury asked the court the following question: "May [the two no contact orders admitted into evidence] be considered, in reference to

---

[3] Id. at 45 (emphasis added).

[4] Report of Proceedings (Sept. 12, 2012) at 189.

[5] Id. at 196-97 (emphasis added).

instruction 16, for answering question two (2) in instructions 14 and 15 [whether Hills knew of the existence of the orders]."[6]

The court gave the parties an opportunity to argue about the proper response. The State argued that the answer should be "yes" because the court admitted the exhibits for their content and limited them to only Counts V and VI.[7] Defense counsel argued that "the answer should be no, because the limiting instruction is very clear, that they can consider the no contact orders only insofar as whether the no contact orders existed."[8] She argued that "[t]elling them anything else would be a contradictory instruction to instruction 16."[9]

The court then responded to the jury's question by giving the following supplemental instruction: "Please read the instructions as a whole. Instruction 16 limits use of exhibits 1 and 2 to the *elements* of Counts V and VI."[10]

The jury convicted Hills on all counts.

Hills appeals.

## SUPPLEMENTAL JURY INSTRUCTION

Hills argues that the trial court "committed reversible error when it changed the law of the case" on Counts V and VI during jury deliberations. The

---

[6] Clerk's Papers at 24.

[7] Report of Proceedings (Sept. 12, 2012) at 220-21.

[8] Id. at 221.

[9] Id. at 231.

[10] Clerk's Papers at 25 (emphasis added).

State properly concedes that the instruction was improper. We accept the concession.

"Pursuant to CrR 6.15, it is within the province of the trial court to instruct the jury."[11] Further, "Generally accepted is the proposition that a trial judge has discretion whether to give further instructions to the jury after deliberations have started."[12] But "supplemental instructions should not go beyond matters that either had been, or could have been, argued to the jury."[13]

We review for abuse of discretion whether giving a supplemental instruction is proper.[14]

State v. Ransom[15] and State v. Hobbs[16] both provide examples of where the court abused its discretion by issuing supplemental instructions. In those cases, the court considered whether the supplemental instruction had the effect of providing a new theory of the case or whether it impacted the defense's trial strategy.

---

[11] State v. Calvin, ___ Wn. App. ___, 316 P.3d 496, 505 (2013).

[12] Ransom, 56 Wn. App. at 714.

[13] Id.

[14] See Calvin, 316 P.3d at 506 ("[O]ur inquiry is whether the trial court abused its discretion when the jury sought further clarification and the trial court identified and corrected a problem."); State v. Becklin, 163 Wn.2d 519, 529, 182 P.3d 944 (2008) ("Whether to give further instructions in response to a request from a deliberating jury is within the discretion of the trial court.").

[15] 56 Wn. App. 712, 785 P.2d 469 (1990).

[16] 71 Wn. App. 419, 859 P.2d 73 (1993).

In Ransom, Division Two concluded that the trial court erred when it gave an accomplice liability instruction after deliberations began.[17] It came to this conclusion because accomplice liability "is a distinct theory of criminal culpability" and "[t]he effect was to add a theory that the State had not elected and that defense counsel had no chance to argue."[18]

In Hobbs, the State and Hobbs both proposed to-convict instructions which included as an element of the crime that the act occurred in King County, Washington.[19] Neither party objected to the instruction.[20]

During deliberations, the State moved to amend the information and modify the to-convict instruction to delete "King County" and insert "State of Washington."[21] Defense counsel objected and "stated that she became aware during trial that there was an issue concerning where the assault had allegedly occurred, and made a strategic choice not to pursue the inconsistency between what the victim said at trial and what she had earlier said to the defense investigator."[22] The court granted the State's motion and modified the jury

---

[17] Ransom, 56 Wn. App. at 713-14.

[18] Id. at 714.

[19] Hobbs, 71 Wn. App. at 420.

[20] Id. at 421.

[21] Id.

[22] Id.

instruction, as requested.[23] It also granted defense counsel's request to reargue, but it denied counsel's motion for a mistrial.[24]

On appeal, this court concluded that the trial court abused its discretion to grant the motion to modify the jury instruction.[25] This court stated, "Although the defense was allowed to reargue, there was no opportunity, here, to rethink its cross examination strategy, a strategy based on the State's earlier error."[26]

Here, as in Ransom and Hobbs, the supplemental instruction, in effect, provided the State with a new method to prove the knowledge element of the crimes charged in Counts V and VI that did not exist under the court's original instructions. Specifically, the supplemental instruction broadened the scope of the limiting instruction, Instruction 16.

The court's original limiting instruction explicitly stated that the no contact orders "may be considered by you *only for the purpose of determining whether there existed a no-contact order in Count V or Count VI. You may not consider it for any other purpose.*"[27] The existence of a no-contact order is the first element of Counts V and VI.[28]

---

[23] Id.

[24] Id.

[25] Id. at 420, 422 n.2.

[26] Id. at 425.

[27] Clerk's Papers at 45 (emphasis added).

[28] See id. at 43-44.

But the court's supplemental instruction stated that consideration of the no-contact orders was limited "*to the elements* of Counts V and VI."[29] This broadened the use of these orders to prove other elements of those two counts, including the second element—whether Hills had knowledge of the orders. This expanded the scope of the prior limitation, providing a new way for the State to prove the knowledge element that was not previously available under the original limiting instruction.

Additionally, as in Hobbs, defense counsel relied on the limiting instruction in her closing argument to the jury. Defense counsel specifically addressed the impact of the limiting instruction on the knowledge element. Importantly, she argued: "*You cannot consider the no contact order for whether or not he had notice of it, whether or not he knew about it* . . . ."[30]

Further, as defense counsel argued to the court, "If we are going to supplement the jury instructions after the fact and we haven't—each of us haven't [sic] had an opportunity to give the jury our own interpretation of that, that is prejudicial."[31] Thus, counsel also brought to the attention of the court the prejudicial impact of giving a supplemental instruction without allowing the parties to reargue. The court did not provide an opportunity to reargue, as the trial court in Hobbs did. Because there was no opportunity for counsel to reargue their

---

[29] Id. at 25 (emphasis added).

[30] Report of Proceedings (Sept. 12, 2012) at 197.

[31] Id. at 224.

8

respective cases after the court gave the supplemental instruction, we need not speculate whether allowing the parties to reargue would have avoided prejudice.

In sum, giving the supplemental instruction permitted the State to prove an element of Counts V and VI stated in the to-convict instructions with evidence that was not available for that purpose under the original jury instructions. This was prejudicial. The State properly concedes error.

## LAW OF THE CASE DOCTRINE

Hills next argues that "[u]nder the original law of the case, the evidence was insufficient to prove Violation of a Court Order." Specifically, he contends that there was insufficient evidence to prove Hills knew about the orders. Accordingly, he argues that the proper remedy is to dismiss Counts V and VI with prejudice. In response, the State argues that the proper remedy is to reverse and remand for a new trial on Counts V and VI. We agree with Hills.

In State v. Hickman, the supreme court explained that "jury instructions not objected to become the law of the case."[32] There, the court applied the "law of the case doctrine" to conclude that "[b]y acquiescing to jury instructions which included venue as a necessary element to convict, even though it really is not an element, the State assumed the burden of proving venue," and it failed to do so.[33] Accordingly, it reversed Hickman's conviction and dismissed the charges with prejudice.[34]

---

[32] 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

[33] Id. at 99.

[34] Id.

As for the remedy of dismissal, the court observed that in criminal cases, the State "assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the 'to convict' instruction."[35] "On appeal, a defendant may assign error to elements added under the law of the case doctrine."[36] "Such assignment of error may include a challenge to the sufficiency of evidence of the added element."[37]

The Hickman court quoted Tonkovich v. Department of Labor & Industries for the following proposition:

> It is the approved rule in this state that the parties are bound by the law laid down by the court in its instructions where, as here, the charge is approved by counsel for each party, no objections or exceptions thereto having been made at any stage. In such case, the sufficiency of the evidence to sustain the verdict is to be determined by the application of the instructions . . . .[38]

Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[39] "Retrial

---

[35] Id. at 102.

[36] Id.

[37] Id.

[38] Id. at 103 (quoting Tonkovich v. Dep't of Labor & Indus., 31 Wn.2d 220, 225, 195 P.2d 638 (1948)).

[39] State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

following reversal for insufficient evidence is 'unequivocally prohibited' and dismissal is the remedy."[40]

The Hickman court also discussed the application of the law of the case doctrine in Hobbs, decided by this court.[41] The Hickman court approved this court's application of the law of the case doctrine in Hobbs, in which the State assumed the burden of proving venue, although venue was not an element of the charged crime.[42] But the supreme disapproved of this court's remedy— remanding for retrial after determining there was insufficient evidence to support the added burden that the State assumed to prove venue. It cited to State v. Hardesty, which stated that the double jeopardy clause protects against a second prosecution for the same offense after reversal for lack of sufficient evidence.[43]

In footnote 4 of the Hickman opinion, the supreme court stated:

> Interestingly, the court in Hobbs reversed for insufficient evidence and then remanded for retrial. Defendant did not seek review of the remand order, and it remains to be explained how a court can, consistent with Hardesty, reverse for insufficient evidence and not dismiss.[44]

Here, as in Hickman, the question is whether there was sufficient evidence to prove what was required under properly given instructions to which neither

---

[40] Hickman, 135 Wn.2d at 103 (quoting State v. Hardesty, 129 Wn.2d 303, 309, 915 P.2d 1080 (1996)).

[41] Id. at 103-04 (citing Hobbs, 71 Wn. App. at 423).

[42] Id. at 104.

[43] 129 Wn.2d 303, 309, 915 P.2d 1080 (1996).

[44] Hickman, 136 Wn.2d at 104 n.4 (citation omitted).

11

side objected: the law of the case. As we discussed previously, the original limiting instruction stated that the no contact orders could be considered *only* for the purpose of determining whether a no contact order existed and not for any other purpose. When that instruction is applied to Counts V and VI, the evidence in this record was insufficient to convict. Specifically, it was insufficient to prove that Hills had knowledge of the two previously entered court orders.

The State does not contest the insufficiency of the evidence to convict under these original instructions. In fact, the State admits: "This was the only evidence presented that showed the defendant had knowledge of the existence of the order. It is also clear that the jury picked up on this fact, as evidenced by its question to the court."

We come to the only major point these parties dispute: the proper remedy on remand. We conclude that Hickman dictates that the proper remedy in this case is dismissal. We come to this conclusion for two reasons. First, the supreme court imposed the remedy of dismissal with prejudice under the law of the case doctrine because of insufficient evidence to prove the added element. Second, the supreme court questioned why dismissal was not imposed in Hobbs.

The State makes several arguments that the proper remedy is remand for a new trial on Counts V and VI, not dismissal. We disagree.

First, the State argues that Hills "fails to explain how the [law of the case] doctrine applies here" and "there was no added element in the instructions to the jury, thus, the State was not required to prove any additional elements." Neither point is persuasive.

12

As for the first point, we explained earlier in this opinion why the law of the case doctrine applies here. As for the second point, this court rejected a similar argument in State v. Calvin.[45] The Calvin court expressly stated, "Although the State argues that the law of the case doctrine applies only when an element is added to a to-convict instruction, *the doctrine is not limited to that application.*"[46] We adhere to that statement of position. This is not a case of an added element, but that makes no difference. The doctrine has been applied to both civil and criminal cases in sufficiently analogous situations to this case to support the application of the doctrine here.

Second, the State argues that Hills misapplies the doctrines of law of the case and sufficiency of evidence. Specifically, the State claims that Hills cites to no case where a court applies sufficiency of evidence analysis to "'what could have been' but for the court's giving of an erroneous instruction." The State's view of Hickman and the authorities on which it relies is too restricted.

There can be no dispute that the law of the case was established in this case by the court's original instructions to which neither side objected. While the court gave a supplemental instruction, we have already concluded that doing so was an abuse of discretion. Thus, the question of remedy for this error is at issue. In determining that remedy, we look to the properly given instructions to determine whether the evidence in the record was sufficient to convict. There is no question, in this case, that the evidence was insufficient. The point was made

---

[45] Calvin, 316 P.3d at 506.

[46] Id.

13

by defense counsel during closing argument. The jury identified the problem when it asked for clarification. And, only after that clarification was provided by an improper supplemental instruction, the jury convicted Hills. On this record, there is no reason to reach any conclusion other than dismissal as the proper remedy under Hickman and Hardesty. The State's argument to the contrary is not persuasive.

Next, the State cites Ransom, where the remedy was a reversal with a new trial granted.[47] But that court of appeals case did not address the law of the case doctrine.[48] It merely stated, without analysis, that retrial was required.[49] This case does nothing to convince us that we should ignore the clear command of Hickman.

Finally, the State relies on State v. Brown for the proposition that "[i]nstructional error is subject to a harmless error review" and "[w]hen instruction error is not found harmless, the remedy is reversal for a new trial."[50] While this is generally true, as previously stated, Hickman dictates dismissal in this case.[51]

---

[47] Brief of Respondent at 12 (citing Ransom, 56 Wn. App. at 714-15).

[48] Ransom, 56 Wn. App. at 712.

[49] Id. at 715.

[50] Brief of Respondent at 12 (citing State v. Brown, 147 Wn.2d 330, 344, 58 P.3d 889 (2002)).

[51] Hickman, 135 Wn.2d at 103.

For these reasons, we conclude that the proper remedy in this case is to remand with instructions for the trial court to dismiss with prejudice Counts V and VI.

## COMMUNITY CUSTODY

Hills argues that he should not have been placed on community custody for his convictions under Counts I through IV, because witness tampering is not a "crime against persons." The State also properly concedes this point. We accept the State's concession.

Under RCW 9.94A.701(3)(a), the court "shall, in addition to the other terms of the sentence, sentence an offender to community custody for one year when the court sentences the person to the custody of the department for . . . [a]ny crime against persons under RCW 9.94A.411(2)." There is no such provision for "crimes against property."[52]

Here, Hills was convicted of four counts of tampering with a witness – domestic violence. The court sentenced him to a term of community custody under the belief that these convictions qualified as crimes against persons. But according to RCW 9.94A.411(2), "Tampering with a Witness" falls within the category of "crimes against property/other crimes." It does not fall within the category of "crime against persons."[53] Thus, the trial court's imposition of the term of community custody was incorrect.

---

[52] See RCW 9.94A.701.

[53] See RCW 9.94A.411(2).

Both parties agree that the proper remedy is to strike the terms of community custody from the felony judgment and sentence. We agree.[54]

Because we conclude that there is no authority to impose community custody under these circumstances, we need not reach the alternative argument that Hills's sentence "would have exceeded the statutory maximum."

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his Statement of Additional Grounds, Hills presents four claims. None merit relief.

First, Hills argues that his "whole case was based on . . . diminished capacity" and that his attorney "did not attempt to receive at least 25 years of mental health records that would have landed this case in mental health court. . . ." Because this argument is not supported by evidence in the record, we decline to review this claim.[55]

Hills also argues that he "only had 1- point while all this stuff began and ended with 9- points at sentencing." It appears that Hills is challenging his offender score, but he makes no specific argument alleging any error that we can review. Accordingly, we do not address this point further.

Hills next discusses his "other charge" of malicious mischief. He also alleges that "they kept [him] in the King County jail for 2 weeks illegally after the

---

[54] See In re Sentence of Jones, 129 Wn. App. 626, 628, 120 P.3d 84 (2005).

[55] See RAP 10.10(c) (stating that an appellate court will not consider an argument made in a statement of additional grounds for review if it does not inform the court of the nature and occurrence of the alleged errors).

original charges were dropped." But Hills does not make any further argument about these alleged errors. Thus, we do not address them.

We reverse the judgment and sentence for Counts V and VI and remand to the trial court for dismissal with prejudice of these charges. We also direct the trial court to strike the term of community custody for Counts I through IV, which we otherwise affirm.

Cox, J.

WE CONCUR: